UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-20596-CIV-ALTONAGA/Torres

METALIZING TECHNICAL SERVICES,
LLC,

    Plaintiff,
v.

BERKSHIRE HATHAWAY SPECIALTY
INSURANCE COMPANY,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on LEAD Engineering Contractors, LLC's Motion to Intervene [ECF No. 14], filed on May 12, 2021. Plaintiff, Metalizing Technical Services, LLC filed a Response [ECF No. 18], to which LEAD filed a Reply [ECF No. 59]. The Court has carefully considered the parties' written submissions, the record, and applicable law.

### I. BACKGROUND

In March 2018, LEAD entered into a contract with the Florida Department of Transportation ("FDOT") to serve as general contractor for a bridge repair and rehabilitation project on MacArthur Causeway, a highway that crosses Biscayne Bay and connects downtown Miami to Miami Beach. (*See* Notice of Removal, Ex. A, State Court Records [ECF No. 1-1] 19).[1] Defendant, Berkshire Hathaway Specialty Insurance Company, agreed to provide LEAD with a surety bond of $12,962.183.16 to secure payment and performance. (*See id.*, Ex. B, Compl. [ECF No. 1-2] 166–70). LEAD's contract with the FDOT incorporated the bond agreement. (*See* State

---

[1] The Court relies on the pagination generated by the Case Management/Electronic Case Files system, which appears as a header on all court filings.

Court Records 17, 20–22). Separately, LEAD agreed to broadly indemnify Defendant for claims — even potential claims — on the bond. (*See* Mot., Ex. B, Gonzalez Aff. [ECF No. 14-2] 12).

In July 2018, LEAD engaged Plaintiff to be a subcontractor on the MacArthur Causeway project. Under the parties' Subcontract [ECF No. 3-1], Plaintiff would supply certain materials, make repairs, and paint structural steel. (*See* Mot. 3). That was the initial plan, at least. In April 2020, LEAD terminated the Subcontract on the ground that Plaintiff failed to obtain and maintain the insurance coverage required by the Subcontract. (*See* Gonzalez Aff. 5–6).

Plaintiff then sued Defendant for breach of bond in state court in Putnam County, Florida, alleging that Defendant failed in its obligation to promptly pay Plaintiff for its services. (*See* Compl. 1–2). Defendant removed the case to the United States District Court for the Middle District of Florida. (*See* Notice of Removal [ECF No. 1] 1). It then filed an Answer and Affirmative Defenses to Plaintiff's Complaint [ECF No. 3]. Defendant's affirmative defenses include "all . . . defenses available to its bond principal, LEAD." (*Id.* 5 (alteration added)). Defendant specifically asserts affirmative defenses based on Plaintiff's alleged failure to maintain all required insurance for its work and on certain provisions of the Subcontract. (*See id.* 6–7, 9).

Defendant moved to transfer the case to this District, and around the same time, LEAD moved to intervene. (*See generally* Mot.; Mot. to Transfer [ECF No. 16]). LEAD attaches to its Motion to Intervene a proposed Answer and Affirmative Defenses, which largely mirrors Defendant's Answer and Affirmative Defenses. (*See* Mot., Ex. A, LEAD's Answer & Affirmative Defenses [ECF No. 14-1] 1–10). The District Court for the Middle District of Florida granted the Motion to Transfer without ruling on the Motion to Intervene. (*See* Feb. 25, 2022 Order [ECF No. 41] 3).

Following the transfer, the Court denied the Motion to Intervene without prejudice to allow the parties to clarify whether the Court would have subject-matter jurisdiction over Plaintiff's claims against LEAD if the Motion were granted. (*See* Mar. 22, 2022 Order [ECF No. 60] 3). Plaintiff then filed an affidavit from its sole member, Jerrod Monaghan, attesting that he is domiciled in Texas. (*See* Monaghan Aff. [ECF No. 64-1] ¶¶ 19–23). LEAD asserts in its Motion that its members are Florida citizens. (*See* Mot. 13). Even though LEAD is not yet a party to this action, Plaintiff has propounded more than 100 document requests on LEAD and has noticed LEAD for a Federal Rule of Civil Procedure 30(b)(6) deposition. (*See* Reply 5).

## II. LEGAL STANDARDS

### A. Mandatory Intervention

A party may move to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). To succeed, that party must make four showings: (1) that the application to intervene is timely; (2) he has an interest in the subject of the action; (3) that, absent intervention, disposition of the action might as a practical matter impede or impair his ability to protect his interest; and (4) his interest is not adequately represented by the existing parties. *See Huff v. Comm'r of IRS*, 743 F.3d 790, 795–96 (11th Cir. 2014) (quoting *Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1302–03 (11th Cir. 2008)); *see also* Fed. R. Civ. P. 24(a)(2).

### B. Permissive Intervention

Federal Rule of Civil Procedure 24(b) governs permissive intervention. "Permissive intervention . . . is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties." *Mt. Hawley Ins. Co. v. Sandy Lakes Props., Inc.*, 425 F.3d 1308, 1312 (11th Cir. 2005) (alteration added; quotation marks and citation omitted). A district

court has broad discretion to allow or disallow permissive intervention "even if both of those requirements are met[.]" *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989) (alteration added; citation omitted); *see also Tursom v. United States*, No. 20-cv-20811, 2021 WL 3493207, at *3 (S.D. Fla. Aug. 9, 2021) (noting that "a district court can consider almost any factor rationally relevant but enjoys very broad discretion in granting or denying the motion" (quotation marks and citation omitted)). In exercising that discretion, the district court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). "Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all disputes in a single action." *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993) (citation omitted).

### III. DISCUSSION

LEAD argues that it may intervene as of right or, alternatively, that the Court should exercise its discretion to permit intervention. (*See* Mot. 7–13). For the following reasons, the Court agrees that permissive intervention is appropriate barring any potential jurisdictional defects. So, it does not consider the parties' arguments concerning mandatory intervention.

#### A. Undue Prejudice

As explained, a party that seeks permissive intervention must meet two requirements: (1) its motion must be timely and (2) its claim or defense must have a question of law or fact in common with the main action. *See* Fed. R. Civ. P. 24(b); *Chiles*, 865 F.2d at 1213. Plaintiff does not dispute that LEAD meets both requirements. (*See* Resp. 13 n.4).

Instead, Plaintiff argues that the Court should exercise its discretion to deny LEAD's Motion because intervention would unduly prejudice Plaintiff's right under Florida law to sue

4

Defendant without joining LEAD. (*See id.* 12–15). Plaintiff points to *Coltin Electric, Inc. v. Continental Casualty Company*, No. 12-0532, 2013 WL 1150920 (S.D. Ala. Mar. 19, 2013), for support. In *Coltin Electric*, the district court denied intervention because granting a motion to intervene would have interfered with a subcontractor's express contractual right to sue a surety without joining the general contractor. *See id.* at *2.

As an initial matter, Plaintiff is correct that under section 337.18(d), Florida Statutes, a subcontractor may pursue a claim for breach of bond against either the general contractor *or* the surety. *See Se. Concrete Constructors, LLC v. W. Sur. Co.*, 331 So. 3d 763, 766 (Fla. 2d DCA 2021). But this fact does not get Plaintiff very far. Although Plaintiff brought this action in state court, the case is now in federal court. In federal court, Rule 24 governs when a party may intervene, even if state law would provide a different rule. *See McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1070–71 (5th Cir. 1970); *Hartford Cas. Ins. Co. v. Cardenas*, 292 F.R.D. 235, 240 n.8 (E.D. Pa. 2013) (citation omitted); *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 410 (2010) (plurality opinion) ("In sum, it is not the substantive or procedural nature or purpose of the affected state law that matters, but the substantive or procedural nature of the Federal Rule."); 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1905 (3d ed. 2022) ("It is wholly clear that the right to intervene in a civil action pending in a United States District Court is governed by Rule 24 and not by state law." (footnote call number omitted)).

In view of that principle, Plaintiff's claim of prejudice falls apart. That claim is predicated on the notion that Plaintiff has a "right" under section 337.18(d) to sue only Defendant. (Resp. 13–14). But when Defendant removed this case to federal court, any such right ceased to exist, at least to the extent that it would require a result that a valid and applicable Federal Rule would not.

5

*See McDonald*, 430 F.2d at 1070–71; *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 229 (3d Cir. 2005); *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 466 n.29 (5th Cir. 1984) (citations omitted). Plaintiff's argument thus proves too much: if permitting intervention when state law would not always equates to "undu[e] . . . prejudice" under Rule 24(b)(3), state laws restricting intervention could override the more liberal Federal Rule. Fed. R. Civ. P. 24(b)(3) (alterations added). That is untenable. There is nothing unduly prejudicial about applying applicable law.

For similar reasons, Plaintiff's reliance on *Coltin Electric* is misguided. There, the district court denied a general contractor's motion for permissive intervention on the ground that the payment bond — not a state statute — expressly permitted the subcontractor to sue "both [the general contractor] and [the surety] or either of them." 2013 WL 1150920, at *2 (alterations added). Thus, because the general contractor "intended for [the subcontractor] to have the right to decide whom to sue," the court concluded that the general contractor would "not be prejudiced by the denial of its motion to intervene[,]" while the subcontractor, in contrast, would be prejudiced if the motion were granted. *Id.* (alterations added).

Here, Plaintiff argues that intervention would prejudice it because a state statute, rather than the bond, permits it to sue Defendant alone. (*See* Resp. 13–14). That difference matters because here, unlike in *Coltin Electric*, the intervenor never agreed to omit itself from an action on the bond. *Coltin Electric* stands, at most, for an estoppel principle — the idea that a party cannot assume one position and later benefit by taking a contrary position. *Coltin Electric* did not conclude that state law controls motions to intervene in federal court. To the extent it can be read as doing so, it fails to persuade. *See McDonald*, 430 F.2d at 1070–71.

In an elaboration of its argument concerning prejudice, Plaintiff contends that the "destruction" of its "right" to sue only Defendant "has practical implications that cause tangible prejudice" to Plaintiff. (Resp. 14). Those "practical implications that cause tangible prejudice" purportedly include having to litigate whether Plaintiff complied with the Subcontract's conditions precedent, which, Plaintiff argues, "have no impact on whether [it] can pursue its breach of bond claim." (*Id.* (alteration added; footnote call number omitted)).

This argument has at least two flaws. One, it rests on a premise that is likely false: that none of the Subcontract provisions is relevant to Plaintiff's claim on the bond. Under Florida law, "[t]he liability of a surety is coextensive with that of the principal." *Am. Home Assurance Co. v. Larkin Gen. Hosp., Ltd.*, 593 So. 2d 195, 198 (Fla. 1992) (alteration added; citations omitted). Generally speaking, "a surety is not liable if the principal is not liable." *Biltmore Constr. Co., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 572 So. 2d 532, 534 (Fla. 2d DCA 1990) (citation omitted), *abrogation on other grounds recognized by Old Republic Sur. Co. v. Reischmann*, 713 So. 2d 434 (Fla. 2d DCA 1998). Accordingly, even sureties such as Defendant "may assert the defenses and even the affirmative claims of its principal against a claim by the obligee on a performance bond or by a claimant under a payment bond." Edward Etcheverry, *Rights & Liabilities of Sureties* § 8.9, *in* Florida Construction Law & Practice (10th ed. 2022) (citations omitted).

Two, even if Plaintiff is correct that the Subcontract is irrelevant, Defendant has already asserted defenses based on Plaintiff's alleged failure to comply with the same Subcontract provisions that Plaintiff maintains are immaterial. (*See* Resp. 14; Def.'s Answer and Affirmative Defenses 5–7, 9; *see also* LEAD's Answer & Affirmative Defenses 1–10). Plaintiff never moved to strike these defenses, so it will need to litigate them whether or not LEAD intervenes.

7

Considered in that light, the argument that introducing the Subcontract into the case will create undue costs for Plaintiff bears little relationship to the record.

While Plaintiff's claim of prejudice fails, additional considerations also weigh in favor of allowing LEAD to intervene. "Perhaps the most obvious benefits of intervention in general are the efficiency and consistency that result from resolving related issues in a single proceeding." *Sec. Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995). For that reason, the Eleventh Circuit has advised district courts to resolve any doubts about intervention "in favor of the proposed intervenors[.]" *Fed. Sav. & Loan Ins. Corp.*, 983 F.2d at 216 (alteration added; citation omitted).

In similar circumstances involving disputes within the tripartite contractor-subcontractor-surety relationship, federal courts have permitted intervention to "conform[] with Rule 24's central goal of preventing a multiplicity of suits that involve common questions." *Manhurin's Constr. Co. v. Granite Re, Inc.*, No. 04-2174, 2004 WL 2249489, at *1 (D. Kan. Sept. 7, 2004) (alteration added); *see also, e.g.*, *United States ex rel. Am. Elec. Co., LLC v. Travelers Cas. & Sur. Co.*, No. 3:21-cv-614, 2021 WL 5280665, at *4–5 (M.D. Fla. Nov. 12, 2021); *Penn Lyon Homes, Inc. v. Liberty Mut. Ins. Co.*, No. 00CV1808, 2001 WL 789200, at *1 (D. Conn. May 14, 2001). That thumb on the scale is especially strong when, as here, the contractor has agreed to indemnify the surety. In that event, litigating the subcontractor's claim on the bond without the contractor threatens a future indemnity action between the surety and the contractor, as well as future litigation between the subcontractor and contractor. *See Mahurin's Constr. Co.*, 2004 WL 2249489, at *1; *Am. Elec. Co., LLC*, 2021 WL 5280665, at *5. Intervention would facilitate a single and final resolution, obviating the need for costly and unwieldy litigation between the same parties about the same issues at a later time.

Moreover, as noted, LEAD proposes raising many of the same defenses that Defendant has already raised. (*See* LEAD's Answer & Affirmative Defenses 1–10; Def.'s Answer & Affirmative Defenses 5–7, 9). This overlap is doubly relevant. First, it lessens any possibility of delay that would result from LEAD's intervention. Second, it is evidence that LEAD's participation in the suit would increase the probability of efficiently obtaining a correct resolution. As a surety, Defendant may, and has, asserted several defenses based on Plaintiff's alleged breaches of the Subcontract between Plaintiff and LEAD. (*See* Def.'s Answer & Affirmative Defenses 5–7, 9); *see also Am. Home Assurance Co.*, 593 So. 2d at 198 (citations omitted). LEAD, as the general contractor, is necessarily better positioned to litigate these defenses.

Finally, LEAD's intervention will not cause undue delay. Plaintiff has sought and obtained significant discovery from LEAD since filing suit nearly two years ago. (*See* Reply 4–5). The case is set for trial later this year, and the Court expects that the parties and LEAD will be prepared to meet their pretrial deadlines absent a showing of good cause and diligence for not doing so. (*See* Scheduling Order [ECF No. 54] 1–2).

In short, numerous prudential considerations weigh in favor of permitting LEAD to intervene, and whatever "prejudice" Plaintiff would suffer as a result would not be "undu[e.]" Fed. R. Civ. P. 24(b)(3) (alteration added).

### B. Limiting the Issues

Plaintiff argues that if LEAD is permitted to intervene, the Court should exercise its discretion to limit LEAD's ability to raise new issues. (*See* Resp. 15–17). In particular, Plaintiff requests that LEAD be barred from raising Plaintiff's alleged failure to comply with conditions precedent to the Subcontract, especially the Subcontract's pay-if-paid clause, as defenses to Plaintiff's breach of bond claim. (*See id.* 16 & n.8). Unquestionably, the Court possesses authority

to limit LEAD's participation in this suit. "Discretion under Rule 24(b) to grant or deny intervention *in toto* necessarily implies the power to condition intervention upon certain particulars." *Southern v. Plumb Tools, A Div. of O'Ames Corp.*, 696 F.2d 1321, 1322 (11th Cir. 1983) (citation omitted).

The Motion to Intervene is a poor vehicle for resolving the merits-laden issues that Plaintiff raises. For starters, it bears repeating that each affirmative defense LEAD proposes to raise (and Plaintiff objects to) is already at issue because Defendant has asserted them in its Answer and Affirmative Defenses. (*See* Resp. 16 & n.8; Def.'s Answer & Affirmative Defenses 5–7, 9). Plaintiff never sought to strike, or to obtain judgment on, those affirmative defenses when Defendant raised them. *See* Fed. R. Civ. P. 12(c), 12(f). It would make little sense to bar LEAD from raising the same defenses when, one way or another, the Court or a jury will need to address them anyway — and particularly when LEAD, as a party to the Subcontract, is in a better position to assert defenses that relate to the Subcontract.

This is not to say that defenses based on the Subcontract have merit. They may, or they may not. *See, e.g.*, *OBS Co., Inc. v. Pace Constr. Corp.*, 558 So. 2d 404, 407–08 (Fla. 1990) (holding that a subcontractor could sue surety on bond despite pay-if-paid clause in subcontract). It is only to say that none of the affirmative defenses that Plaintiff asserts is immaterial would infuse this case with issues that are not already present.

If Plaintiff seeks to limit the scope of the issues that the parties will litigate, it has many other procedural avenues for doing so: Rule 12(c) and 12(f) motions, Rule 56 motions, motions *in limine*, evidentiary objections, and Rule 50 motions. Given these superior procedural devices and that the issues that Plaintiff seeks to exclude are already in the case, the Court will not resolve challenges to the merits of LEAD's affirmative defenses as an afterthought to resolving the Motion

to Intervene. *See Fla. Med. Ass'n, Inc. v. Dep't of Health, Educ., & Welfare*, No. 3:78-cv-00178, 2011 WL 4459926, at *5 (M.D. Fla. May 18, 2011) ("The Court . . . finds that limiting the scope of intervention at this time would require prejudging complex issues, which is procedurally improper and substantively unfounded." (alteration added; citation omitted)). Further, limiting the scope of LEAD's intervention now would undermine the primary virtue of permitting intervention in the first place: obtaining a full and final resolution of all issues between the three parties.

### C. Jurisdiction

"A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist arises." *Fitzgerald v. Seaboard Sys. R.R., Inc.*, 760 F.2d 1249, 1251 (11th Cir. 1985) (citations omitted). Put differently, it is the Court's responsibility to "zealously insure that jurisdiction exists over a case, and [it] should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) (alteration added; citations omitted). The burden of establishing jurisdictional facts rests with the party invoking federal jurisdiction. *See Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Engr's*, 781 F.3d 1271, 1279 (11th Cir. 2015) (citations omitted). So, a party who seeks to intervene in an action pending in federal court bears the burden of demonstrating that the Court has jurisdiction. *See TIG Ins. Co. v. Reliable Rsch. Co.*, 334 F.3d 630, 633 (7th Cir. 2003) (citations omitted).

LEAD asserts that, upon its intervention, the Court would have jurisdiction over the case under either the diversity statute, 28 U.S.C. section 1332, or, alternatively, under the supplemental jurisdiction statute, 28 U.S.C. section 1367(a). (*See* Mot. 13). LEAD further argues that section 1367(b), which limits district courts' supplemental jurisdiction in diversity cases, would not prevent its intervention even if Plaintiff's sole member were a citizen of Florida. (*See id.* 13–14).

11

Diversity jurisdiction exists when a plaintiff and a defendant are citizens of different states and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C. § 1332(a). The amount in controversy easily exceeds section 1332(a)'s threshold.[2] That leaves only diversity of citizenship.

Plaintiff, a limited liability company, has produced uncontroverted evidence that its sole member is domiciled in Texas. (*See* Monaghan Aff. ¶¶ 19–23). "[A] limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (alteration added). Therefore, Plaintiff is a citizen of Texas.

LEAD is also a limited liability company, but it has produced no evidence showing its state of citizenship. Instead, LEAD simply asserts in its Motion that its members are Florida citizens. (*See* Mot. 13). But "a federal court is not bound by the jurisdictional contentions of the parties" in a brief. *Smith*, 236 F.3d at 1299 (citations omitted). "Subject matter jurisdiction is conferred and defined by statute. It cannot be created by the consent of the parties, nor supplanted by considerations of convenience and efficiency." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000) (citations omitted). It does not matter if the jurisdictional fact in question is undisputed. "Because jurisdiction cannot be conferred by consent, the district court should be leery of any stipulations the parties offer concerning the facts related to jurisdiction." *Id.* at 1275.

Without record evidence demonstrating the citizenship of LEAD's members, the Court cannot discern what, if any, jurisdictional basis exists for LEAD's proposed intervention. So, it will give LEAD one more opportunity to submit record evidence that satisfies its jurisdictional burden. To establish its state of citizenship, LEAD must "list the citizenships of all the members

---

[2] Plaintiff's payment demands to Defendant and LEAD's General Agreement of Indemnity with Defendant establish the required jurisdictional amount. (*See* Compl. 172; Gonzalez Aff. 12).

12

of the limited liability company" *and* furnish record adequate evidence as support. *Rolling Greens MHP*, 374 F.3d at 1022.

If LEAD is indeed a Florida citizen, the Court will grant its Motion to Intervene. If diversity jurisdiction does not exist, the Court will address LEAD's arguments concerning supplemental jurisdiction at that time. *See Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1220 (11th Cir. 2017) (noting that because "citizenship of LLCs often ends up looking like a factor tree that exponentially expands every time a member turns out to be another LLC" and, consequently, that a factual "misstep has the potential to derail years of litigation . . . . [i]t is in everyone's best interest, both the litigants' and the courts', to verify that diversity jurisdiction exists before proceeding with the case" (alterations added)).

## IV. CONCLUSION

Accordingly, it is **ORDERED** that on or before **April 22, 2022**, LEAD Engineering Contractors, LLC shall file record evidence demonstrating its state of citizenship for purposes of federal jurisdiction under 28 U.S.C. section 1332. Failure to timely comply or submit sufficient evidence will result in the denial of the Motion to Intervene **[ECF No. 14]**. To the extent that the March 22, 2022 Order **[ECF No. 60]** requires additional discovery, it is **SET ASIDE**.

**DONE AND ORDERED** in Miami, Florida, this 14th day of April, 2022.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: counsel of record